IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| VENTURIST, INC., ) <br> ) <br> Plaintiff ) <br> ) <br> ) <br> ) <br> ) <br> PAT MAUNEY, ) <br> ) <br> Defendant. ) <br> ) | Case No. 2:06cv00494 SRW |

## DEFENDANT PAT MAUNEY'S MOTION FOR CHANGE OF VENUE

### I.    INTRODUCTION

From January 2003 until March 2006, Defendant Pat Mauney resided in Sacramento, California and worked for Plaintiff Venturist, Inc. in Sacramento, California. During this time, Venturist, Inc. deliberately misclassified Mauney as an independent contractor in a stated effort order to avoid the application of California law. As a result of this deliberate misclassification, Venturist, Inc. violated a host of California wage and hour laws, including failing to pay Mauney for commissions she earned, overtime she worked, providing statutory meal and rest breaks, and payment for accrued but unused vacation. Once Mauney's employment with Venturist, Inc. ended in March 2006, Mauney notified Venturist, Inc. of her wage claims and attempted to informally resolve these various issue with Venturist, Inc.'s Chief Executive Officer, John Warden. Knowing that Mauney's claims of unpaid wages were valid, and that Mauney would likely succeed with these claims in California, Plaintiff rushed out and filed this declaratory relief action in an effort to shop for the most favorable forum for itself and the most inconvenient forum for Mauney.

Plaintiff's efforts to avoid the application of California law by deliberately misclassifying Mauney as an independent contractor and now, filing this action in Alabama, instead of California where all of the material events occurred, is improper. As Plaintiff's complaint admits, all of the events upon which this action is based arose during Mauney's employment with Plaintiff in California. Moreover, a large amount of material witnesses to this litigation reside in California. The only tie this matter has to Alabama is that Plaintiff resides in Alabama. The Federal Rules provide relief from such improper forum shopping as what Plaintiff has done in this litigation, and allow a court to transfer any action to a more convenient forum, which in this case is California. Accordingly, Mauney respectfully requests that this Court grant her motion for change of venue and transfer this matter to the Eastern District of California where it belongs.

## II.     STATEMENT OF FACTS

In June 2000, Mauney began working for Plaintiff in Montgomery, Alabama. In August 2001, Mauney entered into an employment agreement with Plaintiff to memorialize their employment relationship and the terms of this relationship. Notably, this 2001 agreement referred to Mauney as an "employee" and did not contain any choice of law provision or choice of forum clause. (Decl. of P. Mauney ¶ 2);(Exhibit "A" attached to Decl. of P. Mauney). In January 2003, Mauney had moved to Sacramento, California and Plaintiff agreed to continue its employment relationship with Mauney, despite her relocation. (Plaintiff's Complaint ¶ 4). Plaintiff decided, however, to re-label Mauney as an independent contractor instead of an employee, in a stated effort to avoid the application of California law. (Plaintiff's Complaint ¶ 4); (Decl. of P. Mauney ¶ 3). This deliberate reclassification of Mauney was rather odd, given the fact that none of Mauney's employment duties for Plaintiff had changed. She was still

performing the same duties in California as she had performed for Plaintiff in Alabama. (Decl. of P. Mauney ¶ 3).

In addition to Plaintiff's improper labeling of Mauney as an independent contractor, it also determined in March 2003 to compensate Mauney solely through commissions. (Plaintiff's Complaint ¶ 4); (Decl. of P. Mauney ¶ 6). This compensation agreement was prepared by Plaintiff's Chief Executive Officer, John Warden, and sent to Mauney via electronic mail. All of the negotiations of this commission agreement were conducted through e-mail or over the telephone, during which time Mauney was already a resident of California. (Plaintiff's Complaint ¶ 4);(Decl. of P. Mauney ¶ 6). The commission agreement was executed by Mauney in California. (Decl. of P. Mauney ¶ 6).

Once this commission agreement was executed by Mauney, she aggressively marketed and assisted in the sale of Plaintiff's products, which included seminars, training materials, and publications. (Decl. of P, Mauney ¶ 6). Mauney's work was primarily performed in California. Mauney regularly contacted clients from her home office in California to pursue their interests in Plaintiff's products and negotiated the sale price of these products. (Decl. of P. Mauney ¶ 6). Pursuant to the commission agreement between Plaintiff and Mauney, such efforts entitled Mauney to either a twenty or ten percent commission, however, Plaintiff completely refused to pay Mauney the entire or partial amount of her commission on several deals. (Decl. of P. Mauney ¶ 6). These multiple breaches of the commission agreement by Plaintiff all occurred during the time in which Mauney resided and worked as an employee in California. (Decl. of P. Mauney ¶ 6).

Mauney's extensive efforts to market and sell Plaintiff's products, in addition to the administrative tasks Mauney performed for Plaintiff while working in California, required her to work overtime, for which Plaintiff never compensated her. Each week, Mauney worked

approximately 55 hours, resulting in 15 hours of weekly overtime. (Decl. of P. Mauney ¶ 5). Mauney notified Plaintiff's CEO, John Warden that she was working overtime, however, Plaintiff never compensated her for this time. (Decl. of P. Mauney ¶ 5). Plaintiff also failed to maintain time records for Mauney or ensure that Mauney was complying with California wage and hour laws, including the requirement to take a thirty minute uninterrupted meal period at or before five hours of work. (Plaintiff's Complaint ¶ 4); (Decl. of P. Mauney ¶¶ 5-8).

In December 2005, Plaintiff decided to again, modify Mauney's employment relationship. Plaintiff re-labeled Mauney as an employee, instead of an independent contractor, despite that fact that none of Mauney's duties had changed. (Plaintiff's Complaint ¶ 8); (Decl. of P. Mauney ¶ 9). Additionally, Plaintiff decided to change Mauney's compensation plan from commissions to a set salary because it felt that Mauney was making too much money through commissions and did not want to pay Mauney for the entire amount of commissions she had earned. (Plaintiff's Complaint ¶ 8); (Decl. of P. Mauney ¶ 9). In order to reflect this change, Plaintiff required Mauney to execute a new employment agreement. This employment agreement was executed by Mauney in California and purportedly governed Mauney's employment relationship with Plaintiff in California from December 2005 until March 2006. (Plaintiff's Complaint ¶ 8); (Decl. of P. Mauney ¶ 10). Although this employment agreement contained an Alabama choice of law provision, all of the underlying events of this litigation occurred before this contract was executed, and therefore this contract has no bearing on the claims of this case. (Plaintiff's Complaint ¶¶ 4-8); (Decl. of P. Mauney ¶¶ 2-8).

In April 2006, Mauney tried to informally resolve the issue of her unpaid wages with Venturist, Inc. Mauney encouraged Venturist, Inc. to compensate her for these wages in order to avoid any formal action in California. (Decl. of P. Mauney ¶ 11). Instead of even attempting to resolve these issues informally, Venturist, Inc. filed this declaratory relief action on April 28,

2006 in Montgomery, Alabama, in an effort to intimidate Mauney from pursuing legal action in California. The filing of this action in Alabama instead of California where Mauney was employed, is clearly suspect given the fact that Plaintiff's complaint essentially admits that all relevant events upon which its action is based, occurred in California. (Plaintiff's Complaint ¶¶4-8).

Moreover, the majority of witnesses who have personal knowledge regarding the issues in this litigation reside in California. Specifically, Mauney's husband, two children, and personal friend, all personally observed the extensive hours Mauney worked and have knowledge of Mauney's working conditions that dictate she was an employee of Plaintiff, not an independent contractor. (Decl. of P. Mauney ¶ 13). Additionally, some of the employees of the various companies with whom Mauney contacted and negotiated to sell the products of Plaintiff, also reside in California and can testify about Mauney's efforts that justify the commissions she is owed by Plaintiff. (Decl. of P. Mauney ¶ 13). All of the other customers, except two, with whom Mauney negotiated to sale Plaintiff's products reside in states other than California or Alabama. (Decl. of P. Mauney ¶ 13).

Mauney is financially strained as a result of Plaintiff's failure to pay her wages she is owed and its threats to enforce an illegal non-compete provision in the contract Mauney signed in December 2005. (Decl. of P. Mauney ¶ 12). Continuing to defend this action in Alabama will place a huge financial inconvenience on Mauney, and may ultimately deny her due process, as she may be forced to abandon her defense as a result of financial problems. (Decl. of P. Mauney ¶ 12).

At the time Mauney's employment ended with Plaintiff in March 2006, Plaintiff was financially thriving, in part, due to the numerous deals Mauney assisted in closing. (Decl. of P. Mauney ¶ 14). John Warden, the Chief Executive Officer for Plaintiff, regularly travels

throughout the United States and even to foreign countries to promote Plaintiff's products and conduct seminars. (Decl. of P. Mauney ¶ 14). As such, requiring John Warden to travel to California to defend this litigation would be insignificant.

### III.     ARGUMENTS

Generally, a plaintiff's choice of forum should not be disturbed. However, when the plaintiff's choice of forum completely lacks any significant ties to the subject matter of the litigation, places an overwhelming inconvenience on the parties and witnesses, and does not further the interests of justice, the plaintiff's choice of forum has little, if any, value. *Chicago, Rock Island, and Pacific Railroad Co.*, 220 F.2d at 304 (7th Cir. 1955); *Lewis v. ACB Business Services, Inc.,* 135 F.3d 389, 413 (6th Cir. 1998); *Cambridge Filter Inc. v. International Filter Co.* 548 F.Supp. 1308, 1311 (Dist. Ct. Nev. 1982); *Ayala - Branch v. Tad Telecomm, Inc.* 197 F.Supp.2d 13, 15 (S.D. N. Y. 2002). In fact, a court should be extremely cautious about allowing a case to remain in a forum that has no relation to that case. *Trout Unlimited v. United States Dept. of Agriculture* 944 F.Supp. 13, 26 (Dist. of Col. 1996).

When such circumstances arise, 28 U.S.C. §1404(a) allows a court to transfer any civil action to any other district or division where the action could have been properly brought for the convenience of parties, witnesses, and in the interest of justice. A judge has broad discretion in determining whether another forum would be more convenient or appropriate than the one chosen by the plaintiff. The ultimate question for a judge to decide is not whether the matter could be heard in the plaintiff's forum of choice, but rather, which forum will best serve the convenience of the parties, witnesses, and ends of justice. *Wright v. American Flyers Airline Corp.*, 263 F.Supp. 865, 867 (Dist. So. Carolina 1967). In making this determination, a judge may consider the following factors: (1) the convenience of the parties, including their economic

means; (2) the convenience of the witnesses; (3) and the interests of justice including, the situs of the operative facts, the comparative familiarity of each district with the governing law, the weight given to the plaintiff's choice of forum, and judicial economy. *Koehring Co. v. Hyde Construction Co.*, 324 F.2d 295, 297 (5th Cir. 1964); *Ayala - Branch v. Tad Telecomm, Inc.,* 197 F.Supp.2d 13, 15 (S.D. N. Y. 2002).[1]  Here, this case could have and should have been properly brought in California.  Moreover, the inconvenience litigating this matter in Alabama places on Mauney and material witnesses, the lack of any substantial tie to Alabama, and the relative unfamiliarity this Court has with California law, all mandate that this matter be transferred to California.  Therefore, Mauney respectfully requests this Court grant her motion for transfer of venue.

### A.    This Matter Could Have Been Properly Brought In California.

#### 1.    Venue is proper in California.

28 U.S.C. section 1391 outlines the proper places where a federal action based upon diversity jurisdiction may be brought:  (1) in a judicial district where a defendant resides; or (2) a judicial district in which a substantial part of the events occurred.  California meets both of these options.  Mauney is a resident of California, and has been since 2003.  Moreover, all of the events upon which Plaintiff's declaratory relief action is based occurred in California.  The overtime hours Mauney worked, the commissions she earned but were never paid, the meal break violations, and Plaintiff's failure to pay Mauney the wages owed at the time their employment relationship ended, all occurred in California.  Accordingly, venue is proper in California.

---

[1] Courts may also consider the location and accessibility to evidence.  However, in this matter, the majority of any documentary evidence is on the laptop Plaintiff provided Mauney during her employment.  Both parties have copies of this information, and so this factor does not weigh in favor of either forum.

## 2. California has personal jurisdiction over all parties.

The Fourteenth Amendment only allows a court to exercise jurisdiction over an individual when the individual has sufficient minimum contacts with the forum so that maintaining control over the lawsuit will not "'offend traditional notions of fair play and substantial justice.'" The Due Process Clause requires that an individual have "fair warning" of where he/she may be sued. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). In order to determine whether an individual has "fair warning" or sufficient minimum contacts with the forum state, the court must analyze three factors: (1) did the party purposefully direct its activities toward the forum state or purposefully avail herself of the privileges and benefits of conducting activities in the state; (2) did the party's cause of action arise out of or result from the forum-related contacts; and (3) would the exercise of jurisdiction be reasonable and fair. *Guidry v. United States Tobacco Company, Inc.*, 188 F.3d 619, 624 (5th Cir. 1999); *Morgan v. North Mississippi Medical Center, Inc.*, 403 F.Supp.2d 1115, 1118 (S.D. Ala. 2005).

Here, there is no question that as a resident of California, Mauney has sufficient contacts with California so that the exercise of personal jurisdiction over her is proper.[2] Similarly, Venturist, Inc. has sufficient minimum contacts with California as well so that the exercise of personal jurisdiction over it would not be unfair or unreasonable. Specifically, Venturist, Inc. employed Mauney in California for approximately three years. (Plaintff's Complaint ¶ 4). Plaintiff's declaratory relief action is directly based upon Mauney's employment relationship with Plaintiff during the time in which she resided in California. Accordingly, California may exercise jurisdiction over this matter.

---

[2] As discussed in Mauney's currently pending Motion to Dismiss for Lack of Personal Jurisdiction, Alabama cannot exercise personal jurisdiction over Mauney due to Mauney's lack of sufficient contacts with Alabama.

**B.    The Convenienc of the Parties Weighs In Favor of Transferring This Matter to the Eastern District of California.**

A key consideration in evaluating the convenience of the parties to litigate a matter in the plaintiff's forum of choice is the financial burden that is placed on both parties. When there is a clear economic disparity between the two parties, due process requires a transfer of venue to alleviate the financial burden on the less financially stable party. *Miracle v. N.Y.P. Holdings, Inc.*, 87 F.Supp.2d 1060, 1069 (Dist. Ct. Hawaii 2000); *Citibank N.A. v. Affinity Processing Corp.*, 248 F.Supp.2d 172, 176 (E.D. N.Y. 2003). An economic disparity is readily apparent when there is a large corporation or business involved in litigation against an individual. *Id.* In considering the financial hardship placed on a defendant, a court may not only consider the financial status of the defendant herself, but also the cost of defense counsel to litigate the matter in the plaintiff's forum of choice as such costs fall directly on the defendant. *Blumenthal v. Management Assistance Inc.*, 480 F.Supp. 470, 474 (N.D. Ill. 1979); *Mobile Oil Corp. v. W.R. Grace & Co.*, 334 F.Supp. 117, 124 FN.5 (S.D. Tex. 1971).

Here, the economic disparity between Mauney and Venturist, Inc. is readily apparent. Mauney is an unemployed individual, who is financially strapped, in large part due to (1) Plaintiff's continued refusal to pay her for commissions, overtime, and vacation earned while she was employed by Plaintiff in California; and (2) Plaintiff's threats to enforce an illegal non-compete provision contained in the contract Mauney executed with Plaintiff in December 2005. *See* California Business and Professions Code section 16600; (Decl. of P. Mauney ¶ 12). As a result of Mauney's current financial state, litigating this matter in Alabama may ultimately deny her due process. If this matter continues in Alabama, Mauney will have to pay for her counsel, who resides in California, to appear at court hearings, depositions, and eventually trial as well as

herself. These travel expenses may ultimately overwhelm Mauney and force her to abandon her defense and any compulsory counterclaims she may have in this litigation.

Conversely, Plaintiff is a financially thriving corporation that has the economic means to litigate this case in California. The Chief Executive Officer of Venturist, Inc., John Warden, often travels across the nation and even to foreign countries to promote the products of Venturist, Inc. (Decl. of P. Mauney ¶ 14). Any additional travel to California to litigate this matter, would be equivalent to another of John Warden's many business trips and would not place any undue financial strain on Venturist, Inc. Moreover, Venturist, Inc. already has local counsel in Sacramento, California who can easily appear at any court ordered hearings or depositions, thereby reducing the financial strain on Plaintiff to litigate this matter in the Eastern District Court of California.[3] Accordingly, Mauney respectfully requests this Court to grant her motion and transfer venue to California.

### C. The Convenience of The Witnesses Weighs In Favor Of Transferring Venue to California.

Mauney and John Warden are the primary witnesses to this litigation, as they are the only individuals who negotiated Mauney's purported independent contractor relationship and commission agreement that are the primary issues in this litigation. As discussed above in section B, the burden on Mauney to litigate this matter in Alabama is significantly greater than any burden placed on John Warden, CEO of Venturist Inc., to litigate this matter in California.

Aside from Mauney and John Warden, the only other material witnesses who have personal knowledge of the hours Mauney worked as well as her employment conditions in California all reside in California, not Alabama. Specifically, Mauney's husband, Mauney's two

---

[3] Plaintiff has retained local counsel Susan Schoenig at McDonough, Holland, and Allen P.C., located in Sacramento, California.

children, and Mauney's friend all regularly observed Mauney working extensive hours during her employment with Venturist, Inc. in California. (Decl. of P. Mauney ¶ 13); (Decl. of L. Mauney ¶ 2); (Decl. of L. Mason ¶ 2); (Decl. of N. Mauney ¶ 2); (Decl. of C. Dante ¶ 2). All of these individuals reside in California and would suffer a great inconvenience if they were required to appear in Alabama for this litigation. (Decl. of N. Mauney ¶ 3); (Decl. of L. Mauney ¶ 3); (Decl. of L. Mason ¶ 3); (Decl. of C. Dante ¶ 3).

The only other material witnesses to this litigation are the individuals of various companies that Mauney worked with during her employment with Venturist, Inc. to sell Venturist, Inc.'s products. These individuals have first hand knowledge of the efforts and participation Mauney contributed to finalizing any sale of Venturist, Inc.'s seminars or publications, and as such, support Mauney's claim that she is entitled to various earned, but unpaid commissions. (Decl. of P. Mauney ¶ 13). Although these individuals are primarily scattered throughout the United States, several of the pertinent individuals reside in California, including customers from Pfizer La Jolla and ANG. (Decl. of P. Mauney ¶ 13). Notably, only two customer witnesses reside in Alabama. Accordingly, the convenience of the witnesses to this litigation weighs in favor of transferring venue to California.

### D. The Interests of Justice Weigh In Favor Of Transferring This Case To California.

The third factor a court should consider when evaluating whether a matter should be transferred to a different forum is the interests of justice. The interests of justice include such issues as the relation of the subject matter of the litigation to the forum and the interest of having the forum most familiar with the applicable law in the case, govern the matter. *Trout, supra,* at 16-17*; Wright, supra,* at 867. Here, both of these interests of justice weigh in favor of transferring the matter to California.

231127.1                                                               11

### 1.     The subject matter of this litigation occurred in California.

California has significant ties to this litigation, as it is the location where <u>all</u> of the material events occurred.  Specifically, when Mauney relocated to California in January 2003, Plaintiff re-labeled her as an independent contractor and decided to change her compensation to commissions.  The discussions and negotiations between Mauney and John Warden regarding her status as an independent contractor and her commissions took place via telephone or electronic mail, during such time when Mauney was already a resident of California.  Thereafter, the overtime hours Mauney worked, the phone calls she made, the emails she sent, and the extensive discussions she had with clients and prospective clients to earn her commissions, all occurred from her office in California.  Several of these customers/clients actually reside in California.  Additionally, Mauney's husband, children, and personal friend who all witnessed a portion of the hours Mauney worked and the extensive efforts she made to sell the products of Venturist, Inc., reside in California as well.  Decl. of L. Mauney ¶ 2); (Decl. of L. Mason ¶ 2); (Decl. of N. Mauney ¶ 2); (Decl. of C. Dante ¶ 2).  Accordingly, the material events and witnesses regarding this litigation occurred and/or reside in California, not Alabama.

The only tie Alabama has to this litigation is that it is the residence of Venturist, Inc. and John Warden.  None of the actual events at issue occurred in Alabama.  Accordingly, Alabama's limited ties to the subject matter of this litigation are insufficient compared to the overwhelming factual nexus this matter has with California.  Mauney therefore respectfully requests this Court to grant her motion for a change of venue.

### 2.     The conflict of law provisions of Alabama require the application of California law.

In determining which state's law should apply when dealing with residents from different states, Alabama has consistently applied the doctrine of *lex loci delecti*.  For contractual causes

of action, the doctrine of *lex loci delecti* dictates that the law of the state where the contract was executed applies. *American Nonwovens, Inc. v. Nonwovens Engineering, S.R.L.*, 628 So.2d 565 (1994).

Here, Mauney's original employment contract with Venturist, Inc., in which Mauney is labeled as an employee, was executed in June 2000 in Montgomery, Alabama. However, that contract is not the basis for the claims in this litigation. Rather, the subsequent contractual agreements between Mauney and Venturist, Inc. regarding Mauney's status as an independent contractor and her payment of commissions that were negotiated and executed by Mauney in California are at issue. Specifically, in January 2003, Plaintiff modified Mauney's employment relationship and relabeled Mauney as an independent contractor. (Plaintiff's Complaint ¶ 4); (Decl. of P. Mauney ¶ 3). Thereafter, in March 2003, Plaintiff modified Mauney's compensation to solely commissions. (Plaintiff's Complaint ¶ 4); (Decl. of P. Mauney ¶ 6). Both of these contractual modifications were specifically made to govern Mauney's relationship with Plaintiff while she resided in California and were executed by Mauney in California. Accordingly, pursuant to Alabama's choice of law provisions, California wage and hour law should govern this matter.

California's wage and hour laws are unique and do not mirror federal laws. Under California law, in order to properly qualify as an independent contractor a court will analyze twelve separate common law factors that evaluate the control and type of relation between the company and individual. *See Empire Star Mines Co. v. California Employment Commission, overturned on other grounds,* 28 Cal.2d 33 (1946); *Grant v. Woods*, 71 Cal.App.3d 647 (1977). Although these common law factors are similar to the factors used by the Internal Revenue Service to determine whether an individual is an independent contractor or employee, the factors are not identical. Additionally, California law calculates both daily and weekly overtime for

employees. *See* California Labor Code §510.  California also requires employers to provide employees with mandatory meal breaks at or before five hours of work. *See* California Labor Code §§ 226.7 and 512.  Failure to provide such mandatory meal and rest breaks subjects employers to statutory penalties. *See* California Labor Code §§ 226.7 and 512.  California also forbids employers from enforcing a "use it or lose it" vacation policy. *See Henry v. Amrol, Inc.,* 222 Cal.App.3d Supp.1 (1990).  If an employer fails to place an accrual cap on its vacation policies, any earned but unused vacation time, rolls over from one year to the next and must be paid out to an employee at the time the employment relationship ends. *See Henry,* 222 Cal.App.3d Supp. 1; California Labor Code §227.3.  An employer's failure to pay any wages owed at the time the employment relationship ends, such as overtime, commissions, and unused vacation, subjects the employer to statutory waiting time penalties. *See* California Labor Code § 203.  The interpretation and application of California's unique wage and hour laws requires a strong understanding of California employment law.  Accordingly, this matter would more efficiently be handled by the Eastern District of California. *See Wright, supr,a* at 867 (stating that although the convenience of the witnesses and parties is important, 'there is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in laws foreign to itself').  Mauney, therefore, respectfully requests this Court to grant her motion for transfer of venue.

### 3. California has a significantly strong interest in protecting an employee from wage and hour abuses.

As demonstrated by the numerous wage and hour provisions California has enacted to protect employees who reside and work in California, it is readily apparent that California has a

significantly strong interest in determining this matter. *See* California Labor Code section 203, 223.7, 510, 512; and California Business and Professions Code section 16600. This interest is even greater, given the fact that Venturist, Inc. deliberately misclassified Mauney as an independent contractor in order to avoid California law. Although Alabama presumably has an interest in protecting its residents as well, this interest is diminished in light of the lack of any significant ties this case has to Alabama.

### IV.     CONCLUSION

California is the place Mauney resides, the place where all of the material events in this litigation occurred, and ultimately, the place where this matter should be heard. The convenience of Mauney, as well as a large portion of the material witnesses, would be better served by transferring this matter to California. Moreover, California has a significantly strong interest in determining issues involving the deliberate violation of its wage and hour laws by foreign companies, and could more efficiently interpret and apply its unique wage and hour laws to this matter. Accordingly, Mauney respectfully requests this Court to grant her motion and transfer this matter to the Eastern District of California.

/S/ - Jenifer D. Barrera
Jennifer D. Barrera
CA Bar No. 219617
Attorney for Defendant Pat Mauney
CARLTON DiSANTE & FREUDENBERGER LLP
8950 Cal Center Drive, Suite 160
Sacramento, CA 95826
Telephone: (916) 361-0991
Fax: (916) 361-1480
E-mail: jbarrera@cdflaborlaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 29, 2006, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following registered:

Emily C. Marks
BALL, BALL, MATTHEWS & NOVAK, P.A.
2000 Interstate Park Drive, Suite 204
P.O. Drawer 2148
Montgomery, AL 36102-2148

Julie Jordan
MARTENSON, HASBROUCK & SIMON, LLP
3379 Peachtree Road, N.E.
Suite 400
Atlanta, GA 30326

                            Respectfully submitted,

                            /S/ - Jennifer D. Barrera
                            Jennifer D. Barrera
                            CARLTON DiSANTE & FREUDENBERGER LLP
                            8950 Cal Center Drive, Suite 160
                            Sacramento, CA 95826
                            Phone: (916) 361-091
                            Fax:  (916) 361-1480
                            e-mail: jbarrera@cdflaborlaw.com
                            CA Bar No. 219617